# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

DONALD WAYNE ROBERTSON                                                PLAINTIFF

VS.                            CAUSE NO.: 2:07CV78-SA-SAA

COAHOMA COUNTY, MISSISSIPPI, et al.                          DEFENDANTS

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

This cause comes on for consideration on Defendant Coahoma County, Mississippi's Motion for Summary Judgment. The Court finds as follows:

*BACKGROUND*

On March 17, 2006, the Plaintiff, Donald Robertson, and two others, Shannon Coats and Marael Strohm, visited the Isle of Capri Casino in Coahoma, Mississippi. Upon arriving at the casino, the Plaintiff alleges that Strohm and Coats entered the casino while he waited in the truck for forty-five minutes. The Plaintiff claims that Strohm returned to the truck and told him to park the truck and enter the casino. After doing so, the Plaintiff entered the casino.

In the meantime, Coats had allegedly attempted (with the aid of stolen identification) to pass a "bad" check for $200.00. According to the Isle of Capri's Security Manager Norvellus Williams' report, Coats stated that "two males gave her the checks and card and told her the checks would be easy to cash here." She described the males as being "in a green Ford Ranger bearing Tennessee tags NRT 204 in the Main Parking Lot." According to the report, Coats stated, "my old man is sitting out there in the valet parking lot in a green Ford ranger. Please go tell him to go home."

Soon thereafter, Plaintiff was apprehended and interrogated by Isle of Capri security officers. It is undisputed that Plaintiff first denied any knowledge of the scheme. Subsequently,

the Coahoma County Sheriff's Department took Plaintiff into custody and placed him in jail. The Plaintiff signed a written statement in which he admitted that he vaguely knew about the checks, but that he thought they were Strohm's. Plaintiff now refutes that statement and insists he was unaware of its contents because he cannot read or write.

In the statement from Shannon Coats given to Mario Magsby, the investigator for the Coahoma County Sheriff's Office, Coats did not implicate the Plaintiff in the scheme. Moreover, in the statement from Strohm to Magsby, Strohm did not implicate that the Plaintiff was involved in the scheme.

On March 19, 2006, Justice Court Judge Kenneth Bush signed a warrant for the Plaintiff on the charge of conspiracy to commit uttering forgery, and the Plaintiff was taken into custody. On March 20, 2006, the Plaintiff complained of chest pain and was taken to the hospital by ambulance. He remained hospitalized for four days and returned to jail on March 24, 2006. Plaintiff had an initial appearance on March 27, 2006. Plaintiff's bond originally set at $25,000 was reduced to $5,000 on March 29 in conjunction with Plaintiff waiving his preliminary hearing. However, he did not make bond.

Plaintiff remained incarcerated for approximately 119 days. On May 30, 2006, Strohm and Coats were indicted by a Grand Jury. Plaintiff was not presented to the Grand Jury. On July 14, 2006, Assistant District Attorney Charles W. Kirkham sent a letter to the Sheriff of Coahoma County informing him that he was not going to present Plaintiff before the Grand Jury. On that same day, Plaintiff was released from the Coahoma County Jail.

Plaintiff brings this suit alleging that his jail conditions were in violation of the Eighth and Fourteenth Amendment; he was denied reasonable bail; and he was falsely imprisoned.[1] Subsequently, the Defendant filed this Motion for Summary Judgment on May 21, 2008.

*STANDARD FOR MOTION FOR SUMMARY JUDGMENT*

To be entitled to summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Rule 56(c) compels the court to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Conclusional allegations, speculation, improbable inferences, and unsubstantiated assertions do not substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Sedgwick, 276 F.3d at 759.

---

[1] In Plaintiff's response to Motion for Summary Judgment, he withdrew the following claims: arrest without probable cause, neglected medical needs, incarceration without counsel, and state law claims.

## DISCUSSION

### § 1983 Claim

42 U.S.C. § 1983 states,

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…

42 U.S.C. § 1983. To maintain a successful § 1983 action, the Plaintiff must prove there has been (1) a deprivation of a federal right (2) that occurred under color of state law, which (3) was caused by a state actor. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004); Phillips v. Vandygriff, 711 F.2d 1217, 1221 (5th Cir. 1983). Section 1983 alone does not create substantive rights. Dismukes v. Hackathorn, 802 F. Supp. 1142, 1444 (N.D. Miss. 1992). Rather, Section 1983 creates a remedy for violation of federal, constitutional, or statutory rights. Cousin v. Small, 325 F.3d 627, 631 (5th Cir. 2003). Section 1983 was designed to deter state and government actors from abusing their official positions by depriving citizens of their constitutionally protected rights and provides redress for any such deprivation. Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986). Mere assertions that a defendant violated a plaintiff's rights are insufficient to maintain a Section 1983 claim. Dismukes, 802 F. Supp. at 1444 (citing Easterling v. Glennville, 694 F. Supp. 911, 917 (S.D. Ga. 1986)).

### Official Capacity

A municipality, such as Coahoma County, will be held liable if the Plaintiff alleges a violation of constitutionally protected rights inflicted pursuant to an official policy or custom. McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 313 (5th Cir. 2002). The plaintiff must demonstrate that a constitutional deprivation was suffered, that the deprivation occurred pursuant to a custom or policy of the county, and that there is a direct causal link between the custom or

4

policy and the deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." Id. Moreover, actions lodged against individuals in their official capacity are essentially against the municipality. Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996). Specifically, the Fifth Circuit in Webster v. Houston, stated an official policy is

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or
2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy making authority. Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

735 F.2d 838, 841 (5th Cir. 1984).

In sum, proof of an official policy or custom can be proved in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. See Monell, 436 U.S. at 694, 98 S. Ct. 2018.

*THE PARTIES' CONTENTIONS*

The Plaintiff contends that the conditions of his confinement violated his Eighth and Fourteenth Amendment constitutional rights. Particularly, the Plaintiff insists he slept on floors in overcrowded conditions, woke up with cockroaches and flies around him, and lost seventy pounds while incarcerated. Furthermore, the Plaintiff avers he was unable to use a telephone in

5

order to make bail. He asserts he attempted several times to make a call and was denied the right. Furthermore, Plaintiff contends Robertson, Strohm, and Coats were all white and were denied phone calls at various times which violates his right to Equal Protection. The plaintiff alleges that denial of phone privileges evidences a pattern or policy of discrimination on the basis of their white race at the Sheriff's Department. To support his contention, Plaintiff cites Strohm's testimony that a sergeant called Strohm "white boy," and stated that the white judge "don't run sh*t around here. This is my f***ing jail."

Lastly, the Plaintiff asserts that he was falsely imprisoned and should have been released on May 30, 2006, when the other alleged co-conspirators, and not the Plaintiff, were put in front of a Grand Jury. In sum, the Plaintiff states that through the official acts of the policymaker, Sheriff Thompson, he was held in the jail for six weeks after there was any justifiable reason for doing so. In addition, Plaintiff cites Sheriff Thompson's testimony which, after being asked why Robertson was not released a week after the Grand Jury met, answered "I wish I could answer that question, sir. Every now and then there are some that get overlooked or we miss and . . . that's only explanation I can give there." Plaintiff concludes that this proves Defendant had a policy or custom of depriving inmates of Fourteenth Amendment rights.

Conversely, Defendant avows that no official policy was violated. As to the telephone access, the Defendant claims that Plaintiff was housed in a cell which had full-time access to two separate telephones and inmates were free to use at any time. Moreover, Defendant avers that it does not have a policy or custom of disallowing phone calls by inmates for the purposes of making bail. In addition, the Defendant argues Plaintiff's equal protection claim has not been met since both Coats and Strohm bonded out months before Robertson did.

6

Defendant also persists that Plaintiff has failed to plead a federal claim of false imprisonment against the Defendant. Defendant states that the first time Plaintiff raised the false imprisonment claim was in the amended complaint when he added state law claims.[2] Nevertheless, Defendant asserts that Plaintiff has failed to prove that Coahoma County had a policy or custom of falsely imprisoning individuals.

Lastly, the Defendant claims the Plaintiff could not have lost 70 pounds since on March 17, 2006, the date of the arrest, Plaintiff weighed 225 pounds. Then, during his second visit to the hospital on June 13, 2006, he weighed 210 pounds. Thus, Defendant argues Plaintiff could not have lost 45 pounds between June 13 and July 14. As to the sleeping on the floor allegation, Defendant argues that Plaintiff admitted in his deposition he had a cot on which to sleep. In sum, the Defendant concludes he cannot prove an Eighth or Fourteenth Amendment claim.

**Jail Conditions**

The Fourteenth Amendment prohibits the "imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'" Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996) (citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). Conditions will amount to deprivations of liberty without due process if they amount to punishment of the detainee. Harris v. Angelina County, 31 F.3d 331, 335 (5th Cir. 1994). "Of course, confinement of a pretrial detainee necessarily involves some loss of liberty." Harris, 31 F.3d at 335. The Plaintiff's claim that the jail was overcrowded, insects were present, and he was denied a mattress on occasions does not create a genuine issue of material fact that a constitutional violation existed.

---

[2] In the First Complaint, as well as in the Amended Complaint, Plaintiff alleged a false imprisonment claim in violation of state law against the Casino. Thus, the first time the Plaintiff claimed a false imprisonment claim against Coahoma County, Mississippi, was in the Amended Complaint.

7

The Plaintiff asserts in the Complaint that he "often" slept on the floor. However, the Court is unaware of an affidavit or any sworn testimony where Plaintiff states that he "often" slept on the floor. The only evidence that references this is in the Plaintiff's deposition which states,

> Q. (Mr. Allen) You had to sleep in the floor, it was over-crowded, the food wasn't very good?
>
> A. (Mr. Robertson) I did.

However, further in the deposition, the Plaintiff asserts,

> A. . . . So, I just got over in the corner on my little cot.

Thus, Plaintiff conceded he did have a cot on which to sleep, and the record is lacking any sworn testimony that he often slept on the floor.

Plaintiff's further asserts the jail was overcrowded. Notably, "overcrowding of persons in custody is not per se unconstitutional." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004). Moreover, not only has Plaintiff failed to give evidence of overcrowding, Plaintiff has failed in proving that the alleged overcrowded jail deprived him of any basic human need. Cf. Harris, 31 F.3d at 335 (holding that evidence from reports and numerous incidents supported the finding that county was aware of the problem of overcrowding). Moreover, Plaintiff has not even alleged the overcrowding amounted to punishment and was not reasonably related to a legitimate governmental purpose.

Lastly, Plaintiff states that he often woke up with flies and roaches around him. Generally, Plaintiff asserts the jail conditions were "wretched." Plaintiff has failed to prove that the presence of insects or the jail conditions as a whole amounted to punishment. See Knight v. McGee, 2007 WL 3506462 *4 (S.D. Miss. 2007) (holding that plaintiff failed to prove that

alleged pest infestation and the presence of bugs and rodents amounted to punishment even though he was bitten around the mouth area).

In sum, the Plaintiff failed to prove that the conditions of the jail deprived him of a liberty interest in violation of his due process. Furthermore, the Plaintiff has not shown that any of the above were as a result of or amounted to punishment of a pretrial detainee.

**Telephone Access / Denial of Right to Bail**

Plaintiff insists he was denied access to a telephone in order to make bail. Courts have recognized a right to the telephone when coupled with a Sixth Amendment right to counsel, right to access the courts, First Amendment right to communicate, or a Fourteenth Amendment right to post bail. Feeley v. Sampson, 570 F.2d 364 (1st Cir. 1978)(noting right of access to counsel and courts); Simpson v. Gallant, 223 F. Supp. 2d 286, 296 (D. Me. 2002) (recognizing the First Amendment right and the Fourteenth Amendment access to bail right). Since Plaintiff has withdrawn his Sixth Amendment right to counsel claim and has not brought an access to the courts or First Amendment claim, the Court will only evaluate Plaintiff denial of right to bail claim.

In his deposition, the Plaintiff continually asserts he was unable to use the phone; however, the Plaintiff concedes that he did have access to the mail,

> Q. Okay. What about Tommy Crum?
> A. Well, I wrote him a letter one time and he said he was going to get me out, but he found out it [bail] was so much he couldn't come up with it or something like that. Anyway, he said he couldn't get me out. But I wrote him a letter, but he never did write me back.
> Q. But he told you he got the letter?
> A. Yeah, but he didn't get me out because he said it was too much.

As evidenced by his deposition, Plaintiff had, at the least, access to mail. Thus, Plaintiff had a reasonable alternative with which to make bail, i.e. through the mail. Plaintiff cites

Simpson, for the basis that the interference with the ability to post bail falls under the Fourteenth Amendment umbrella that protects the right to post-arrest procedural guarantees. However, the Court in Simpson additionally held that the detainees access to mail was not an unreasonable alternative to the phone and was an adequate safeguard of the detainee's right to arrange bail. Simpson, 223 F. Supp. 2d at 296 (citing Turner v. Safley, 482 U.S. 78, 88, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)).

Similarly, the Plaintiff had reasonable alternative means with which to procure bail, and therefore, was not deprived of a Fourteenth Amendment right to post bail.

It is imperative to note that some courts, including the Fifth Circuit have recognized a limited right under some circumstances to telephone access by detainees. Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (holding that barring telephone access to a detainee and placing him in confinement precluded summary judgment since Plaintiff proved it as retaliatory motive for reporting the lack of access to a judge); Montana v. Comm'rs Ct., 659 F.2d 19, 23 (5th Cir. 1981) (recognizing unreasonable restrictions on telephone use). However, although some Courts have held that detainees have a First Amendment right to communicate with friends and family, the Plaintiff has failed to plead the violation of the First Amendment in the Complaint. See Simpson, 223 F. Supp. 2d at 296. The Plaintiff merely mentioned the right in the Response to Motion for Summary Judgment.

Moreover, Montana is distinguishable from the case *sub judice*. In Montana, a pretrial detainee brought an action against a jail asserting the conditions were in violation of his rights. 659 F.2d at 20. The detainee asserted numerous violations including, but not limited to failure to provide clean clothes, pornographic publications, mail free from censorship, sheets, pillows, and telephone access. Id. The Defendants filed a motion for failure to state a claim and the district

10

court granted the motion in part and denied in part. Id. at 20-21. In particular, the Court granted Defendants' motion as to the telephone access and deemed it frivolous. Id. at 23. The Fifth Circuit Court of Appeals reversed the findings on numerous grounds and held that district courts have guarded against unreasonable restrictions on telephone use. Id. The Court cited Feeley as its basis. Id.

Montana is distinguishable from this case because it involved a motion for failure to state a claim, and in the totality the Plaintiff alleged a significant amount of conditions that were violations. See id. This Court has before it a Motion for Summary Judgment which only states he was denied telephone access to make bail. As aforementioned, the detainee had other means in which to contact friends and family in order to make bail. Notably, the Plaintiff's girlfriend obviously knew he was incarcerated and, upon her released, did not bail him out. The Plaintiff has failed to establish that the denial was a punishment or had a punitive purpose in retaliation of an act.

Additionally, Plaintiff scantily contends that the denial of telephone usage "appears to be racially based" as mentioned *supra*. The Plaintiff has only cited one case in support of his equal protection claim which generally states that "there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Plaintiff has not proved that a class of people i.e. Caucasians, were treated differently in the jail and that any class other than white persons were allowed unlimited access to the phones. See Longcrier v. Armstrong, No. 3:07-cv-110 – HTW-LRA, 2007 WL 2461946 at *2, 2007 U.S. Dist. LEXIS 63633 at *6 (S.D. Miss. Aug. 27, 2007) (holding no equal protection claim existed where the Plaintiff failed to allege inmates of other races were treated differently) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). Without

more, Plaintiff has failed to create a genuine issue of material fact that he was deprived of his rights to equal protection guaranteed by the Fourteenth Amendment.

**False Imprisonment**

Finally, Plaintiff brings forth a claim of false imprisonment. The Defendant contends Plaintiff added the false imprisonment claim against it with the addition of state law claims when he amended the complaint on October 5, 2007. Moreover, Defendant persists that since Plaintiff withdrew his state law claims in his Response to Motion for Summary Judgment [88], and he has failed to allege the federal claim of false imprisonment, he essentially cannot allege *any* claim of false imprisonment. The Court agrees with the Defendant that he has failed to allege a federal claim of false imprisonment in the complaint against Coahoma County since the mention of allegation of false imprisonment against Coahoma County was in the state law claims paragraph. Nevertheless, out of an abundance of caution, the Court will evaluate the Plaintiff's false imprisonment claim under the Fourteenth Amendment. At the outset, the Court notes that the Plaintiff has withdrawn his claim for lack of probable cause for the arrest.

The 5th Circuit has held that an illegal detention or false imprisonment is a recognized § 1983 tort. Simmons v. McElveen, 846 F.2d 337 (5th Cir. 1988). A majority of the case law involving the federal right of false imprisonment involves mistaken or false identity. Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Harris v. Payne, 254 Fed. Appx. 410 (5th Cir. 2007); Sanchez v. Swyden, 139 F.3d 464 (5th Cir. 1998); Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992); Simmons, 846 F.2d at 337; Williams v. Lee Co. Sheriff's Dep't, 744 So. 2d 286 (Miss. 1999). It is imperative to note that the case *sub judice* does not involve a mis-identity.

As the Supreme Court observed in Baker v. McCollan, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." 443 U.S. at 145, 99 S. Ct. 2689; Barfield v. Louisiana, No. 05-2218, 2008 WL 516559 at *7, 2008 U.S. Dist. LEXIS 14317 at *21 (W.D. La. Feb. 25, 2008). "For an illegal detention or false imprisonment to become a cause of action and constitute a violation of constitutional rights, the Fifth Circuit mandates 'proof that the official's actions went beyond mere negligence.' Sanchez, 139 F.3d at 469 (citing Sanders, 950 F.2d at 1159). To reiterate, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

Plaintiff has failed to prove that the officer's conduct was knowing and willful and amounted to more than mere negligence. Notably, as aforementioned, the Plaintiff has since withdrawn his probable cause for the arrest claim and does not bring a claim that the warrant which held him in custody is facially invalid.

Although Plaintiff was held approximately six weeks after he was not presented to the grand jury, again, he has failed to bring forth evidence that the incarceration amounted to more than negligence, and certainly, has not proven the Defendant knowingly or willfully retained him in incarceration. In fact, the Sherriff stated in his deposition that some inmates "get overlooked" which further evidences to the Court that the act was, at most, mere negligence.

Plaintiff notes that exculpatory evidence existed that would have exonerated him. However, not only does the Court disagree that affirmative valid evidence existed, failing to take the affirmative step of reviewing exculpatory evidence does not create a due process claim. See Harris, 254 Fed. Appx. at 420 (citing Sanchez, 139 F.3d at 469). The case sub judice is more

factually similar to Harris, Williams, Sanchez, and Simmons where summary judgment was granted, than Sanders, where summary judgment was denied. Any miniscule exculpatory evidence the Defendant in this case *may* have had access to pales in comparison to the evidence in Sanders. Compare Simmons, 846 F.2d at 339 (holding that although a misidentified detainee was incarcerated for eight months, the officer's conduct of failing to look at the fingerprints did not exceed mere negligence), with Sanders, 950 F.2d at 1155-60 (denying motion for summary judgment based on the holding that the arresting officer received credible information through numerous alibi witnesses and that a genuine issue of material fact existed that the officer knowingly and willfully ignored the fact that detainee was misidentified).

In sum, the Plaintiff has not alleged that any act of the Defendant rises beyond the level of negligence. Moreover, Plaintiff has not proved that the Defendant's conduct was knowing or willful. Thus, a constitutional deprivation has not occurred.

*CONCLUSION*

For these reasons, Plaintiff has failed to allege a constitutional violation required to bring forth a valid § 1983 action. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED**.

A separate order shall issue in accordance with this opinion.

This, the 6th day of August, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT COURT JUDGE**